# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>TICKETMASTER ENTERTAINMENT, INC., *et al.*,<br><br>*Defendants.* | Case: 1:10-cv-00139<br>Assigned to: Collyer, Rosemary M.<br>Assign. Date: 1/25/2010<br>Description: Antitrust |

## FINAL JUDGMENT

WHEREAS, plaintiffs, United States of America, and the States of Arizona, Arkansas, California, Florida, Illinois, Iowa, Louisiana, Nebraska, Nevada, Ohio, Oregon, Rhode Island, Tennessee, Texas, and Wisconsin, and the Commonwealths of Massachusetts and Pennsylvania ("Plaintiff States") filed their Complaint on January 25, 2010, and whereas the States of New Jersey and Washington joined as Plaintiff States pursuant to an Amended Complaint filed January 28, 2010, the United States, Plaintiff States, and defendants, Ticketmaster Entertainment, Inc. and Live Nation, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the defendants and the imposition of certain conduct restrictions on defendants, to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.  Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.  Definitions

As used in this Final Judgment:

A.      "AEG" means Anschutz Entertainment Group, Inc., a company with its headquarters in Los Angeles, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

C.      "Client Ticketing Data" means financial data relating to a ticketing client's events including on-sale dates for a client's events, the number of tickets sold for the specific event, the proceeds from those sales for a specific event, ticket inventory that is made available on the Ticketmaster system, the number and location of tickets that are sold, the amount for which the tickets are sold, pricing, marketing and promotions run for the event, the sales as a result of the marketing or promotions, and the status of the ticket inventory.  "Client ticketing data" does not include data that Defendants collect through other means (e.g., website tracking, user group surveys, public sources).  Client Ticketing Data does not include data that is made public by a client or third party.

D.      "Comcast-Spectacor" means Comcast-Spectacor, L.P., a company with its headquarters in Philadelphia, Pennsylvania, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.      "Condition" means to explicitly or practically require buyers to take one product or set of services if they want to obtain a second product or set of services.  In the absence of explicit conditioning, providing the buyer with an opportunity to buy the two products or sets of services separately is only conditioning if no reasonable buyer would be expected to accept the terms of the separate offers.

F.      "Covered Employee" means any employee of Defendants whose principal job responsibility involves the operation or day-to-day management of Defendants' venues, concert promotions, or artist management services.

G.      "Defendants" means either defendant acting individually or both defendants acting collectively, as appropriate.  Where the Final Judgment imposes an obligation to engage in or refrain from engaging in certain conduct, that obligation shall apply as broadly as reasonable to each defendant individually, both defendants acting together, and the merged firm.

H.      "Divestiture Assets" means the Ticketmaster Host Platform (via the binding agreement to license and to provide private label ticketing services to the Ticketmaster Host Platform Acquirer as required in Section IV.A) and Paciolan.

I.      "Exempted Employee" means any employee of Defendants who is not a Covered Employee, including:  (a) any senior corporate officer, director or manager with responsibilities that include oversight of Defendants provision of Primary Ticketing Services; and (b) any employee whose primary responsibilities solely include accounting, human resources, legal, information systems, and/or finance.

J.      "Live Entertainment Event" means a live music concert for which tickets are sold to the public.

K.      "Live Nation" means defendant Live Nation, Inc., a Delaware corporation with its headquarters in Beverly Hills, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

L.      "Merger" means the merger of Ticketmaster and Live Nation.

4

M.      "Paciolan" means Paciolan, Inc., a Delaware corporation which is engaged in the provision of ticketing services to venues or other organizations under the Paciolan or Ticketmaster Irvine names, and which includes:

1.      All tangible assets that comprise the Paciolan line of business, including servers and other computer hardware; research and development activities; all fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used exclusively in connection with Paciolan; all licenses, permits and authorizations issued by any governmental organization relating to Paciolan; all contracts, teaming arrangements, agreements, leases (including the lease to the Paciolan headquarters in Irvine, California), commitments, certifications, and understandings, relating to Paciolan, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to Paciolan;

2.      All intangible assets used in the development, distribution, production, servicing and sale of Paciolan, including, but not limited to, all patents, contractual rights (including contractual rights to provide ticketing services and employment contracts), licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and

devices, safety procedures for the handling of materials and substances, all
research data concerning historic and current research and development
relating to Paciolan, quality assurance and control procedures, design tools
and simulation capability, all manuals and technical information
defendants provide to their own employees, customers, suppliers, agents or
licensees, and all research data concerning historic and current research
and development efforts relating to Paciolan, including, but not limited to,
designs of experiments, and the results of successful and unsuccessful
designs and experiments.  Preexisting commitments to transfer contractual
rights from Paciolan to another entity that are specifically identified in the
Paciolan sales agreement are excluded from this definition.

N.     "Paciolan Acquirer" means the entity to whom defendants divest Paciolan.

O.     "Primary Ticketing Services" means a collection of services provided to venues or
other customers to enable the initial sale of tickets for live entertainment events directly to
customers and enable the validation of tickets at the venue to control access to the event.

P.     "Provide Live Entertainment Events" and "Provision of Live Entertainment
Events" mean services reasonably necessary to plan, promote, market and settle a Live
Entertainment Event, including but not limited to concert promotion services provided by firms
such as Live Nation and the provision of artists managed by firms such as Front Line.  The
Promotion of Live Entertainment Events specifically does not include the provision of primary
ticketing services, venue management services and/or tour design and construction services.

Q.      "Retaliate" means refusing to Provide Live Entertainment Events to a Venue

Owner, or Providing Live Entertainment Events to a Venue Owner on less favorable terms, for

the purpose of punishing or disciplining a Venue Owner because the Venue Owner has

contracted or is contemplating contracting with a company other than Defendants for Primary

Ticketing Services.  The term "Retaliate" does not mean pursuing a more advantageous deal with

a competing Venue Owner.

R.      "Ticket Buyer Data" means non-public identifying information for ticket buyers

for a specific event (including, if provided, the buyer's name, phone number, e-mail address, and

mailing address) that Defendants collect in the course of providing a ticketing client's Primary

Ticketing Services.  Ticket Buyer Data does not include data that Defendants collect solely

through other means (e.g., website tracking, user group surveys, public sources).

S.      "Ticketmaster" means defendant Ticketmaster Entertainment, Inc., a Delaware

corporation with its headquarters in West Hollywood, California, its successors and assigns, and

its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships,

and joint ventures, and their directors, officers, managers, agents, and employees.

T.      "Ticketmaster Host Platform" means the primary Ticketmaster software used by

Ticketmaster to sell primary tickets in the United States.  The Ticketmaster Host Platform

includes the following software:  Ticketmaster Classic Ticketing System (also called

Ticketmaster Host); Ticketmaster.com full website package; Access Management; payment

processing and settlements; and PCI point of sale system (for phone and outlets).

U.      "Ticketmaster Host Platform Acquirer" means AEG, the entity with whom

defendants will enter into a binding agreement to license the Ticketmaster Host Platform.

7

V.      "Venue Owner" means a person or company that owns, operates, or manages one or more venues that host Live Entertainment Events.

### III.  Applicability

A.      This Final Judgment applies to Ticketmaster and Live Nation, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.       If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirers of the assets divested pursuant to this Final Judgment.

### IV.  Divestiture

A.      Defendants are ordered and directed not to consummate the Merger until they have entered into a binding agreement to license the Ticketmaster Host Platform to the Ticketmaster Host Platform Acquirer and to provide private label ticketing services to the Ticketmaster Host Platform Acquirer in a manner consistent with this Final Judgment and with the following terms and conditions:

1.      The agreement shall include the option, exercisable at the discretion of the Ticketmaster Host Platform Acquirer, to acquire a non-exclusive, perpetual, fully-paid up license to the Ticketmaster Host Platform.  The license shall include a copy of the source code of the Ticketmaster Host Platform and shall permit the Ticketmaster Host Platform Acquirer to

modify the software in any manner without limitation and without any requirement to license back any improvements to Defendants.  If the option is exercised, Defendants shall promptly begin the installation of a fully functional ticketing system and website in the facilities of the Ticketmaster Host Platform Acquirer and shall complete the installation within a reasonable time pursuant to a schedule subject to approval by the United States, after consultation with Plaintiff States.  Defendants shall warrant that the system is current as of the time of installation and operational for use in providing Primary Ticketing Services.  Defendants shall provide reasonable training and support to enable the Ticketmaster Host Platform Acquirer to operate the software and to understand the source code so that it can make independent changes to the code.  The license shall permit the Ticketmaster Host Platform Acquirer to transfer the license following the complete installation of the Ticketmaster Host Platform.  The scope of use of the license shall be at least the United States.

2.      The agreement shall include a private label ticketing agreement pursuant to which Ticketmaster shall provide private label ticketing services to the Ticketmaster Host Platform Acquirer for a period of no more than five years from the date of execution of the license.  The private label ticketing agreement shall be on such reasonable terms and conditions that will enable the Ticketmaster Host Platform Acquirer to compete effectively

against Ticketmaster to secure contracts for the provision of Primary
Ticketing Services.  The private label ticketing agreement shall give the
Ticketmaster Host Platform Acquirer all control over the ticketing fees
charged individual consumers or clients of the Ticketmaster Host Platform
Acquirer for tickets sold pursuant to the agreement and Defendants shall
have no right or ability to set these ticketing fees.  Ticketmaster shall, at
the request of the Ticketmaster Host Platform Acquirer, post on the main
Ticketmaster public website links to events sold under the private label
ticketing agreement, subject to reasonable, non-discriminatory, and
customary terms and conditions.  Ticketmaster shall customize a separate
website for the Ticketmaster Host Platform Acquirer with branding, look,
and feel to be determined by the Ticketmaster Host Platform Acquirer.
The private label ticketing services as described in this Section shall be
operational within six months from the date that the binding agreement to
license Ticketmaster Host Platform becomes effective.

B.      Defendants shall implement the Ticketmaster Host Platform binding agreement
required by Section IV.A and any resulting Ticketmaster Host Platform license in a manner
consistent with the terms of Section IV.A.  Defendants shall comply with the terms of the
Ticketmaster Host Platform binding agreement required by Section IV.A and any resulting
Ticketmaster Host Platform license, provided that nothing in the Ticketmaster Host Platform
binding agreement or resulting Ticketmaster Host Platform license can relieve Defendants of any
obligations imposed by this Final Judgment.

C.      Defendants shall, as soon as possible, but within one business day after completion of the relevant event, notify the United States and Plaintiff States of:  (1) the effective date of the Merger and (2) the effective date of the binding agreement to license to the Ticketmaster Host Platform Acquirer.

D.      If the Ticketmaster Host Platform Acquirer exercises its option to license the Ticketmaster Host Platform, Defendants shall waive any non-compete agreements that would prevent any employee of Defendants whose primary responsibility is the development or operation of the Ticketmaster Host Platform from joining the Ticketmaster Host Platform Acquirer.

E.      Defendants are ordered and directed, concurrently with the closing of the Merger, to enter into a Letter of Intent to divest Paciolan to Comcast-Spectacor in a manner consistent with this Final Judgment.  Within sixty (60) calendar days of closing the Merger, Defendants shall complete the divestiture of Paciolan in a manner consistent with this Final Judgment to Comcast-Spectacor or an alternative Acquirer acceptable to the United States, in its sole discretion, after consultation with Plaintiff States.   Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

F.      Defendants shall provide the United States and the Paciolan Acquirer information relating to the personnel involved in the production, operation, development and sale of Paciolan at any time since Ticketmaster acquired Paciolan to enable the Paciolan Acquirer to make offers of employment.  Defendants will not interfere with any negotiations by the Paciolan Acquirer to employ any defendant employee whose primary responsibility is the production, operation, development, and sale of Paciolan, and shall waive any non-compete agreements that would

11

prevent any such employee from joining the Paciolan Acquirer.  Nothing in this Section shall prohibit defendants from making offers of continued employment to, continuing to employ, or continuing to use the services of any of their employees, including personnel involved in the production, operation, development and marketing of Paciolan and its ticketing system, subject to the overarching limitation that the agreement to sell Paciolan to the Paciolan Acquirer must ensure that the Paciolan Acquirer will be able to adequately staff Paciolan in a manner that enables the Paciolan Acquirer to successfully compete as a provider of Primary Ticketing Services, as determined by United States in its sole discretion.  In addition, nothing in this Section shall prohibit defendants from maintaining any reasonable restrictions on the disclosure by an employee who accepts an offer of employment with the Paciolan Acquirer of the defendants' proprietary non-public information that is (1) not otherwise required to be disclosed by this Final Judgment, (2) related solely to the defendants' businesses and clients, and (3) not related to the production, operation, development, and marketing of Paciolan and its ticketing system.

G.      Defendants shall permit the Paciolan Acquirer to have reasonable access to personnel and to make inspections of the physical facilities of Paciolan; access to any and all environmental, zoning, and other permit documents and information; access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

H.      Defendants shall warrant to the Paciolan Acquirer that each asset it acquires will be operational on the date of sale.

I.      Defendants shall warrant to the Paciolan Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of Paciolan, and that following the sale of Paciolan, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of Paciolan.

J.      Defendants shall not take any action that will impede in any way the permitting, operation, use, or divestiture of the Divestiture Assets.

K.      Unless the United States otherwise consents in writing, after consultation with Plaintiff States, the divestitures pursuant to Section IV of this Final Judgment shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing business, engaged in providing Primary Ticketing Services.  Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States, after consultation with Plaintiff States, that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

1.      shall be made to an Acquirer(s) that, in the United States's sole judgment, after consultation with Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of providing Primary Ticketing Services; and

13

2.      shall be accomplished so as to satisfy the United States, in its sole discretion, after consultation with Plaintiff States, that none of the terms of any agreement between an Acquirer(s) and Defendants give Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

### V.  Appointment of Trustee to Effect Divestiture

A.      If Defendants have not divested Paciolan as specified in Section IV.E, defendants shall notify the United States of that fact in writing.  Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to divest Paciolan in a manner consistent with this Final Judgment.  Defendants consent to appointment of a trustee prior to entry of this Final Judgment if Paciolan has not been divested within the time periods provided in Section IV.E.

B.      After the appointment of a trustee becomes effective, only the trustee shall have the right to sell Paciolan. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, after consultation with Plaintiff States, at such cash price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.

C.     Subject to Section V.E of this Final Judgment, the trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

D.     Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

E.     The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred.  After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of Paciolan and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

F.     Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture.  The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, including any information provided to the United States during its investigation of the merger related to the business to be divested, and defendants shall

develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information.  Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

G.      After its appointment, the trustee shall file monthly reports with the United States, Plaintiff States, and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in Paciolan, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest Paciolan.

H.      If the trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final

16

Judgment, which may, if necessary, include extending the trust and the term of the trustee's

appointment by a period requested by the United States.

### VI.  Notice of Proposed Divestiture

A.       Within two (2) business days following execution of a definitive divestiture

agreement, defendants shall notify the United States and Plaintiff States of any proposed

divestiture required by Section IV of this Final Judgment.  Within two (2) business days

following execution of a definitive divestiture agreement, the trustee shall notify the United

States and Plaintiff States of any proposed divestiture required by Section V of this Final

Judgment.  The notice shall set forth the details of the proposed divestiture and list the name,

address, and telephone number of each person not previously identified who offered or expressed

an interest in or desire to acquire any ownership interest in Paciolan, together with full details of

the same.

B.       Within fifteen (15) calendar days of receipt by the United States and Plaintiff

States of such notice, the United States may request from defendants, the proposed Acquirer(s),

any other third party, or the trustee if applicable, additional information concerning the proposed

divestiture, the proposed Acquirer(s), and any other potential Acquirer.  Defendants and the

trustee shall furnish any additional information requested within fifteen (15) calendar days of the

receipt of the request, unless the parties shall otherwise agree.

C.       Within thirty (30) calendar days after receipt of the notice or within twenty (20)

calendar days after the United States and Plaintiff States has been provided the additional

information requested from defendants, the proposed Acquirer(s), any third party, and the trustee,

whichever is later, the United States shall provide written notice to defendants and the trustee, if

there is one, stating whether or not it objects to the proposed divestiture.  If the United States,

after consultation with Plaintiff States, provides written notice that it does not object, the

divestiture may be consummated, subject only to defendants' limited right to object to the sale

under Section V.C of this Final Judgment.  Absent written notice that the United States does not

object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed

under Section IV or Section V shall not be consummated.  Upon objection by defendants under

Section V.D, a divestiture proposed under Section V shall not be consummated unless approved

by the Court.

## VII.  Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## VIII.  Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, defendants

shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by

this Court.  Defendants shall take no action that would jeopardize the divestiture ordered by this

Court.

## IX.  Anti-Retaliation Provision and Other Provisions Designed to Promote Competition

A.    Defendants shall not:

1.    Retaliate against a Venue Owner because it is known to Defendants that the Venue Owner is or is contemplating contracting with a company other than Defendants for Primary Ticketing Services;

2.    Condition or threaten to Condition the Provision of Live Entertainment Events to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for Primary Ticketing Services; or

3.    Condition or threaten to Condition the provision of Primary Ticketing Services to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for the Provision of Live Entertainment Events.

Nothing in this Section prevents Defendants from bundling their services and products in any combination or from exercising their own business judgment in whether and how to pursue, develop, expand, or compete for any ticketing, venue, promotions, artist management, or any other business, so long as Defendants do so in a manner that is not inconsistent with the provisions of this Section.

Evidence that Defendants do or do not (a) bid for, contract with, win, or retain a venue, artist, or promoter as a client, and/or (b) promote a show or shows in particular buildings or group of buildings (even where similar shows historically have been promoted in those buildings) is not alone sufficient to establish, or create a presumption of, a violation of this

19

Section.

B.      Defendants shall not disclose to any Covered Employee any Client Ticketing Data.  Defendants however: (1) may disclose Client Ticketing Data concerning a specific event to any Covered Employee involved in the promotion of that event or the management of the artist who performed at that event, if it does so on the same terms it generally provides such information to other promoters or artist managers not affiliated with Defendants; (2) may disclose Client Ticketing Data to an Exempted Employee who requires the information in order to perform his or her job function(s); provided however, that such Exempted Employee may not use Client Ticketing Data to perform any job function(s) that primarily involve(s) the day-to-day operation or management of Defendants' venues, concert promotions, or artist management services; and (3) may disclose Client Ticketing Data to any Defendant employee where so required by law, government regulation, legal process, or court order, so long as such disclosure is limited to fulfillment of that purpose.

C.      If any client of Defendants' primary ticketing services chooses not to renew a contract for Primary Ticketing Services with Defendants for some or all of its venues, upon the expiration of that contract and the written request of the client, Defendants shall within forty-five (45) days provide the client with a complete copy of all Client Ticketing Data and all Ticket Buyer Data historically maintained by Defendants for such venue(s) in the ordinary course of business, in a form that is reasonably usable by the client.  Nothing in this provision shall be read to: (1) alter any rights Defendants would otherwise have to Client Ticketing Data or Ticket Buyer Data pursuant to the Primary Ticketing Services contract with the client, and/or its historical custom, practice, and course of dealing with the client; or (2) limit any rights the client would

20

otherwise have to its Client Ticketing Data or Ticket Buyer Data pursuant to the Primary

Ticketing Services contract with Defendants and/or its historical custom, practice, and course of

dealing with Defendants.  Defendants shall maintain Client Ticketing Data and Ticket Buyer

Data on behalf of its clients for no less than three (3) years.  This provision only applies to

contracts for Primary Ticketing Services in effect prior to the entry of this Final Judgment.

## X.  Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestitures have been completed under

Section IV or Section V, defendants shall deliver to the United States and Plaintiff States an

affidavit as to the fact and manner of its compliance with Section IV or Section V of this Final

Judgment.  Each such affidavit shall include the name, address, and telephone number of each

person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed

an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry

about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact

with any such person during that period.  Each such affidavit shall also include a description of

the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide

required information to prospective Acquirers, including the limitations, if any, on such

information. Assuming the information set forth in the affidavit is true and complete, any

objection by the United States, after consultation with Plaintiff States, to information provided by

defendants, including limitation on information, shall be made within fourteen (14) calendar days

of receipt of such affidavit.

B.      Every two (2) months prior to the private label ticketing agreement described in

21

Section IV.A.2 becoming operational, and every six (6) months thereafter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section IV.A and the terms of Ticketmaster Host Platform binding agreement.

C.      Defendants shall, in addition, deliver to the United States and Plaintiff States an affidavit describing any revised or amended agreements with the Ticketmaster Host Platform Acquirer relating to the agreement required by Section IV.A.  Such notice shall be delivered to the United States and Plaintiff States at least fifteen (15) calendar days prior to the effective date of the revised or amended agreement and Defendants shall not implement any amended agreement if the United States, after consultation with Plaintiff States, objects during the fifteen (15) day notice period.

D.      Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States and Plaintiff States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change if implemented.

E.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

### XI.  Compliance Inspection

A.      For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

1.      access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

2.      to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested. Written reports authorized under this paragraph may, at the sole discretion of the United States, require Defendants to conduct, at Defendants' cost, an independent audit or analysis relating to

any of the matters contained in this Final Judgment.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or the Attorney General's Office of any other plaintiff, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. Notification

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), defendants, without providing advance notification to the United States and Plaintiff States, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in any person that, at any time during the twelve (12) months immediately preceding such acquisition, was engaged in the United States in providing Primary Ticketing Services during the term of this Final Judgment.

Such notification shall be provided to the United States and Plaintiff States in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended.  Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the 30-day period after notification, representatives of the United States make a written request for additional information, defendants shall not consummate the proposed transaction or agreement until twenty (20) calendar days after submitting all such additional information.  Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XIII.  No Reacquisition

A.      Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

B.      Following the expiration of the private label ticketing agreement with the Ticketmaster Host Platform Acquirer required by Section IV.A.2:  (1) Defendants shall not provide Primary Ticketing Services to any venues in North America for which, by virtue of an ownership interest, the Ticketmaster Host Platform Acquirer controls the rights to select the

Primary Ticketing Services provider; and (2) for all other venues in North America, Defendants shall not provide Primary Ticketing Services on behalf of or pursuant to a ticketing contract with the Ticketmaster Host Platform Acquirer.   Nothing in this Section shall prevent Defendants from: (1) competing to provide Primary Ticketing Services to venues (including such venues managed by the Ticketmaster Host Platform Acquirer) other than those for which, by virtue of an ownership interest, the Ticketmaster Host Platform Acquirer controls the rights to select the Primary Ticketing Services provider; and (2) providing Primary Ticketing Services to artist fan clubs in venues owned, operated, or managed by the Ticketmaster Host Platform Acquirer.

## XIV.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XVI.  Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any

comments thereon and the United States' responses to comments.  Based upon the record before

the Court, which includes the Competitive Impact Statement and any comments and response to

comments filed with the Court, entry of this Final Judgment is in the public interest.


Date:  _____


Court approval subject to procedures of the Antitrust Procedures
and Penalties Act, 15 U.S.C. § 16.


_____

United States District Judge