~~IN THE~~ **UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA, *et al.*,

        *Plaintiffs*,

   v.

TICKETMASTER ENTERTAINMENT,
INC., ~~*et al*~~ and LIVE NATION
ENTERTAINMENT, INC.,

        *Defendants.*

Case: 1:10-cv-00139-RMC
Assigned to: Collyer, Rosemary M.
Assign. Date: 1/25/2010
Description: Antitrust

**[PROPOSED] AMENDED FINAL JUDGMENT**

WHEREAS, plaintiffs, United States of America, and the States of Arizona, Arkansas, California, Florida, Illinois, Iowa, Louisiana, Nebraska, Nevada, Ohio, Oregon, Rhode Island, Tennessee, Texas, and Wisconsin, and the Commonwealths of Massachusetts and Pennsylvania ("Plaintiff States") filed their Complaint on January 25, 2010, and whereas the States of New Jersey and Washington joined as Plaintiff States pursuant to an Amended Complaint filed January 28, 2010, the United States, Plaintiff States, and defendants, Ticketmaster Entertainment, Inc. and Live Nation, Inc., by their respective attorneys, ~~have~~ consented to the entry of th~~is~~e Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, the United States and Defendants have consented to the entry of this Amended Final Judgment;

AND WHEREAS, defendants agree to be bound by the provisions of this Amended Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Amended Final Judgment is the prompt and certain divestiture of certain rights or assets by the defendants and the imposition of certain conduct restrictions on defendants, to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Amended Final Judgment:

A.      "AEG" means Anschutz Entertainment Group, Inc., a company with its headquarters in Los Angeles, California, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.     "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

C.     "Client Ticketing Data" means financial data relating to a ticketing client's events including on-sale dates for a client's events, the number of tickets sold for the specific event, the proceeds from those sales for a specific event, ticket inventory that is made available on the Ticketmaster system, the number and location of tickets that are sold, the amount for which the tickets are sold, pricing, marketing and promotions run for the event, the sales as a result of the marketing or promotions, and the status of the ticket inventory. "Client ticketing data" does not include data that Defendants collect through other means (e.g., website tracking, user group surveys, public sources). Client Ticketing Data does not include data that is made public by a client or third party.

D.     "Comcast-Spectacor" means Comcast-Spectacor, L.P., a company with its headquarters in Philadelphia, Pennsylvania, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.     "Condition" means to explicitly or practically require buyers to take one product or set of services if they want to obtain a second product or set of services. In the absence of explicit conditioning, providing the buyer with an opportunity to buy the two products or sets of services separately is only conditioning if no reasonable buyer would be expected to accept the terms of the separate offers.

F.      "Covered Employee" means any employee of Defendants whose principal job responsibility involves the operation or day-to-day management of Defendants' venues, concert promotions, or artist management services.

G.      "Defendants" means either defendant acting individually or both defendants acting collectively, as appropriate. Where the Amended Final Judgment imposes an obligation to engage in or refrain from engaging in certain conduct, that obligation shall apply as broadly as reasonable to each defendant individually, both defendants acting together, and the merged firm.

H.      "Divestiture Assets" means the Ticketmaster Host Platform (via the binding agreement to license and to provide private label ticketing services to the Ticketmaster Host Platform Acquirer as required in Section IV.A) and Paciolan.

I.      "Exempted Employee" means any employee of Defendants who is not a Covered Employee, including: (a) any senior corporate officer, director or manager with responsibilities that include oversight of Defendants provision of Primary Ticketing Services; and (b) any employee whose primary responsibilities solely include accounting, human resources, legal, information systems, and/or finance.

J.      "Live Entertainment Event" means a live music concert for which tickets are sold to the public.

K.      "Live Nation" means defendant Live Nation, Inc., a Delaware corporation with its headquarters in Beverly Hills, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

L.      "Merger" means the merger of Ticketmaster and Live Nation.

4

M.      "Paciolan" means Paciolan, Inc., a Delaware corporation which is engaged in the provision of ticketing services to venues or other organizations under the Paciolan or Ticketmaster Irvine names, and which includes:

1.      All tangible assets that comprise the Paciolan line of business, including servers and other computer hardware; research and development activities; all fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used exclusively in connection with Paciolan; all licenses, permits and authorizations issued by any governmental organization relating to Paciolan; all contracts, teaming arrangements, agreements, leases (including the lease to the Paciolan headquarters in Irvine, California), commitments, certifications, and understandings, relating to Paciolan, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to Paciolan;

2.      All intangible assets used in the development, distribution, production, servicing and sale of Paciolan, including, but not limited to, all patents, contractual rights (including contractual rights to provide ticketing services and employment contracts), licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all

research data concerning historic and current research and development relating to Paciolan, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information defendants provide to their own employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to Paciolan, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments. Preexisting commitments to transfer contractual rights from Paciolan to another entity that are specifically identified in the Paciolan sales agreement are excluded from this definition.

N.      "Paciolan Acquirer" means the entity to whom defendants divest Paciolan.

O.      "Primary Ticketing Services" means a collection of services provided to venues or other customers to enable the initial sale of tickets for live entertainment events directly to customers and enable the validation of tickets at the venue to control access to the event.

P.      "Provide Live Entertainment Events" and "Provision of Live Entertainment Events" mean to supply a Live Entertainment Event, Live Entertainment Events and/or services reasonably necessary to plan, promote, market and settle a Live Entertainment Event, including but not limited to concert promotion services provided by firms such as Live Nation and the provision of artists managed by firms such as Front Line. The Promotion of Live Entertainment Events specifically does not include the provision of primary ticketing services, venue management services and/or tour design and construction services.

Q.      "Retaliate" means refusing to Provide Live Entertainment Events to a Venue Owner, or Providing Live Entertainment Events to a Venue Owner on less favorable terms, for

the purpose of punishing or disciplining a Venue Owner because the Venue Owner has contracted or is contemplating contracting with a company other than Defendants for Primary Ticketing Services. The term "Retaliate" does not mean pursuing a more advantageous deal with a competing Venue Owner.

R.      "Ticket Buyer Data" means non-public identifying information for ticket buyers for a specific event (including, if provided, the buyer's name, phone number, e-mail address, and mailing address) that Defendants collect in the course of providing a ticketing client's Primary Ticketing Services. Ticket Buyer Data does not include data that Defendants collect solely through other means (e.g., website tracking, user group surveys, public sources).

S.      "Ticketmaster" means defendant Ticketmaster Entertainment, Inc., a Delaware corporation with its headquarters in West Hollywood, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

T.      "Ticketmaster Host Platform" means the primary Ticketmaster software used by Ticketmaster to sell primary tickets in the United States. The Ticketmaster Host Platform includes the following software: Ticketmaster Classic Ticketing System (also called Ticketmaster Host); Ticketmaster.com full website package; Access Management; payment processing and settlements; and PCI point of sale system (for phone and outlets).

U.      "Ticketmaster Host Platform Acquirer" means AEG, the entity with whom defendants will enter into a binding agreement to license the Ticketmaster Host Platform.

V.      "Venue Owner" means a person or company that owns, operates, or manages one or more venues that host Live Entertainment Events.

W.      "Management" means all directors and officers of Defendants, or any other employee with management or supervisory responsibilities for Defendants' business or operations related to negotiating the provision of Primary Ticketing Services or the Provision of Live Entertainment Events.

Z.      "Relevant Employees" means Defendants' employees with responsibility for negotiating the provision of Primary Ticketing Services or the Provision of Live Entertainment Events.

### III. Applicability

A.      This Amended Final Judgment applies to Ticketmaster and Live Nation, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Amended Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Amended Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Amended Final Judgment. Defendants need not obtain such an agreement from the Acquirers of the assets divested pursuant to this Amended Final Judgment.

### IV. Divestiture

A.      Defendants are ordered and directed not to consummate the Merger until they have entered into a binding agreement to license the Ticketmaster Host Platform to the Ticketmaster Host Platform Acquirer and to provide private label ticketing services to the Ticketmaster Host Platform Acquirer in a manner consistent with this Amended Final Judgment and with the following terms and conditions:

1.      The agreement shall include the option, exercisable at the discretion of the Ticketmaster Host Platform Acquirer, to acquire a non-exclusive, perpetual, fully-paid up license to the Ticketmaster Host Platform. The license shall include a copy of the source code of the Ticketmaster Host Platform and shall permit the Ticketmaster Host Platform Acquirer to modify the software in any manner without limitation and without any requirement to license back any improvements to Defendants. If the option is exercised, Defendants shall promptly begin the installation of a fully functional ticketing system and website in the facilities of the Ticketmaster Host Platform Acquirer and shall complete the installation within a reasonable time pursuant to a schedule subject to approval by the United States, after consultation with Plaintiff States. Defendants shall warrant that the system is current as of the time of installation and operational for use in providing Primary Ticketing Services. Defendants shall provide reasonable training and support to enable the Ticketmaster Host Platform Acquirer to operate the software and to understand the source code so that it can make independent changes to the code. The license shall permit the Ticketmaster Host Platform Acquirer to transfer the license following the complete installation of the Ticketmaster Host Platform. The scope of use of the license shall be at least the United States.

2.      The agreement shall include a private label ticketing agreement pursuant to which Ticketmaster shall provide private label ticketing services to the

Ticketmaster Host Platform Acquirer for a period of no more than five years from the date of execution of the license. The private label ticketing agreement shall be on such reasonable terms and conditions that will enable the Ticketmaster Host Platform Acquirer to compete effectively against Ticketmaster to secure contracts for the provision of Primary Ticketing Services. The private label ticketing agreement shall give the Ticketmaster Host Platform Acquirer all control over the ticketing fees charged individual consumers or clients of the Ticketmaster Host Platform Acquirer for tickets sold pursuant to the agreement and Defendants shall have no right or ability to set these ticketing fees. Ticketmaster shall, at the request of the Ticketmaster Host Platform Acquirer, post on the main Ticketmaster public website links to events sold under the private label ticketing agreement, subject to reasonable, non-discriminatory, and customary terms and conditions. Ticketmaster shall customize a separate website for the Ticketmaster Host Platform Acquirer with branding, look, and feel to be determined by the Ticketmaster Host Platform Acquirer. The private label ticketing services as described in this Section shall be operational within six months from the date that the binding agreement to license Ticketmaster Host Platform becomes effective.

B.    Defendants shall implement the Ticketmaster Host Platform binding agreement required by Section IV.A and any resulting Ticketmaster Host Platform license in a manner consistent with the terms of Section IV.A. Defendants shall comply with the terms of the Ticketmaster Host Platform binding agreement required by Section IV.A and any resulting

Ticketmaster Host Platform license, provided that nothing in the Ticketmaster Host Platform binding agreement or resulting Ticketmaster Host Platform license can relieve Defendants of any obligations imposed by this Amended Final Judgment.

C.     Defendants shall, as soon as possible, but within one business day after completion of the relevant event, notify the United States and Plaintiff States of: (1) the effective date of the Merger and (2) the effective date of the binding agreement to license to the Ticketmaster Host Platform Acquirer.

D.     If the Ticketmaster Host Platform Acquirer exercises its option to license the Ticketmaster Host Platform, Defendants shall waive any non-compete agreements that would prevent any employee of Defendants whose primary responsibility is the development or operation of the Ticketmaster Host Platform from joining the Ticketmaster Host Platform Acquirer.

E.     Defendants are ordered and directed, concurrently with the closing of the Merger, to enter into a Letter of Intent to divest Paciolan to Comcast-Spectacor in a manner consistent with this Amended Final Judgment. Within sixty (60) calendar days of closing the Merger, Defendants shall complete the divestiture of Paciolan in a manner consistent with this Amended Final Judgment to Comcast-Spectacor or an alternative Acquirer acceptable to the United States, in its sole discretion, after consultation with Plaintiff States. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

F.     Defendants shall provide the United States and the Paciolan Acquirer information relating to the personnel involved in the production, operation, development and sale of Paciolan at any time since Ticketmaster acquired Paciolan to enable the Paciolan Acquirer to make offers of employment. Defendants will not interfere with any negotiations by the Paciolan Acquirer to

11

employ any defendant employee whose primary responsibility is the production, operation, development, and sale of Paciolan, and shall waive any non-compete agreements that would prevent any such employee from joining the Paciolan Acquirer. Nothing in this Section shall prohibit defendants from making offers of continued employment to, continuing to employ, or continuing to use the services of any of their employees, including personnel involved in the production, operation, development and marketing of Paciolan and its ticketing system, subject to the overarching limitation that the agreement to sell Paciolan to the Paciolan Acquirer must ensure that the Paciolan Acquirer will be able to adequately staff Paciolan in a manner that enables the Paciolan Acquirer to successfully compete as a provider of Primary Ticketing Services, as determined by United States in its sole discretion. In addition, nothing in this Section shall prohibit defendants from maintaining any reasonable restrictions on the disclosure by an employee who accepts an offer of employment with the Paciolan Acquirer of the defendants' proprietary non-public information that is (1) not otherwise required to be disclosed by this Amended Final Judgment, (2) related solely to the defendants' businesses and clients, and (3) not related to the production, operation, development, and marketing of Paciolan and its ticketing system.

G.      Defendants shall permit the Paciolan Acquirer to have reasonable access to personnel and to make inspections of the physical facilities of Paciolan; access to any and all environmental, zoning, and other permit documents and information; access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

H.      Defendants shall warrant to the Paciolan Acquirer that each asset it acquires will be operational on the date of sale.

12

I.      Defendants shall warrant to the Paciolan Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of Paciolan, and that following the sale of Paciolan, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of Paciolan.

J.      Defendants shall not take any action that will impede in any way the permitting, operation, use, or divestiture of the Divestiture Assets.

K.      Unless the United States otherwise consents in writing, after consultation with Plaintiff States, the divestitures pursuant to Section IV of this Amended Final Judgment shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing business, engaged in providing Primary Ticketing Services. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States, after consultation with Plaintiff States, that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Amended Final Judgment,

1.      shall be made to an Acquirer(s) that, in the United States's sole judgment, after consultation with Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of providing Primary Ticketing Services; and

13

2.      shall be accomplished so as to satisfy the United States, in its sole

discretion, after consultation with Plaintiff States, that none of the terms of

any agreement between an Acquirer(s) and Defendants give Defendants

the ability unreasonably to raise the Acquirer's costs, to lower the

Acquirer's efficiency, or otherwise to interfere in the ability of the

Acquirer to compete effectively.

### V. Appointment of Trustee to Effect Divestiture

A.      If Defendants have not divested Paciolan as specified in Section IV.E, defendants

shall notify the United States of that fact in writing. Upon application of the United States, the

Court shall appoint a trustee selected by the United States and approved by the Court to divest

Paciolan in a manner consistent with this Amended Final Judgment. Defendants consent to

appointment of a trustee prior to entry of this Amended Final Judgment if Paciolan has not been

divested within the time periods provided in Section IV.E.

B.      After the appointment of a trustee becomes effective, only the trustee shall have

the right to sell Paciolan. The trustee shall have the power and authority to accomplish the

divestiture to an Acquirer acceptable to the United States, after consultation with Plaintiff States,

at such cash price and on such terms as are then obtainable upon reasonable effort by the trustee,

subject to the provisions of Sections IV, V, and VI of this Amended Final Judgment, and shall

have such other powers as this Court deems appropriate.

C.      Subject to Section V.E of this Amended Final Judgment, the trustee may hire at

the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall

be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in

the divestiture.

14

D.      Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

E.      The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of Paciolan and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

F.      Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, including any information provided to the United States during its investigation of the merger related to the business to be divested, and defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

G.      After its appointment, the trustee shall file monthly reports with the United States, Plaintiff States, and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this <u>Amended</u> Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in Paciolan, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest Paciolan.

H.      If the trustee has not accomplished the divestiture ordered under this <u>Amended</u> Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the <u>Amended</u> Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

### VI. Notice of Proposed Divestiture

A.      Within two (2) business days following execution of a definitive divestiture agreement, defendants shall notify the United States and Plaintiff States of any proposed

divestiture required by Section IV of this Amended Final Judgment. Within two (2) business days following execution of a definitive divestiture agreement, the trustee shall notify the United States and Plaintiff States of any proposed divestiture required by Section V of this Amended Final Judgment. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in Paciolan, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States and Plaintiff States of such notice, the United States may request from defendants, the proposed Acquirer(s), any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States and Plaintiff States has been provided the additional information requested from defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States, after consultation with Plaintiff States, provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V.C of this Amended Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by

defendants under Section V.D, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Amended Final Judgment.

## VIII. Hold Separate

Until the divestiture required by this Amended Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. Anti-Retaliation Provision and Other Provisions Designed to Promote Competition

A.      Defendants shall not:

1.      Retaliate against a Venue Owner because it is known to Defendants that the Venue Owner is or is contemplating contracting with a company other than Defendants for Primary Ticketing Services;

2.      Condition or threaten to Condition the Provision of Live Entertainment Events to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for Primary Ticketing Services, or. For the avoidance of doubt, this provision prohibits Defendants from threatening to withhold the Provision of Live Entertainment Events if a Venue decides to contract with a company other than Defendants for Primary Ticketing Services; or

18

3.      Condition or threaten to Condition the provision of Primary Ticketing Services to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for the Provision of Live Entertainment Events.

For the avoidance of doubt, Section IX prohibits Defendants from Conditioning, Retaliating, or threatening to Condition with respect to the provision of one or more Live Entertainment Events. Live Nation waives any argument that this Amended Final Judgment only prohibits Retaliation or Conditioning with respect to all Live Nation content. Particular conduct may violate more than one provision of this Amended Final Judgment, e.g., Sections IX.A.1. and IX.A.2. of this Amended Final Judgment are not mutually exclusive.

Nothing in this Section prevents Defendants from bundling their services and products in any combination or from exercising their own business judgment in whether and how to pursue, develop, expand, or compete for any ticketing, venue, promotions, artist management, or any other business, so long as Defendants do so in a manner that is not inconsistent with the provisions of this Section.

Evidence that Defendants do or do not (a) bid for, contract with, win, or retain a venue, artist, or promoter as a client, and/or (b) promote a show or shows in particular buildings or group of buildings (even where similar shows historically have been promoted in those buildings) is not alone sufficient to establish, or create a presumption of, a violation of this Section. For the avoidance of doubt, Live Nation waives any argument that Plaintiffs must identify particular shows that have been withheld in order to prevail on a claim of Retaliation.

B.      Defendants shall not disclose to any Covered Employee any Client Ticketing Data. Defendants however: (1) may disclose Client Ticketing Data concerning a specific event to

any Covered Employee involved in the promotion of that event or the management of the artist who performed at that event, if it does so on the same terms it generally provides such information to other promoters or artist managers not affiliated with Defendants; (2) may disclose Client Ticketing Data to an Exempted Employee who requires the information in order to perform his or her job function(s); provided however, that such Exempted Employee may not use Client Ticketing Data to perform any job function(s) that primarily involve(s) the day-to-day operation or management of Defendants' venues, concert promotions, or artist management services; and (3) may disclose Client Ticketing Data to any Defendant employee where so required by law, government regulation, legal process, or court order, so long as such disclosure is limited to fulfillment of that purpose.

      C.      If any client of Defendants' primary ticketing services chooses not to renew a contract for Primary Ticketing Services with Defendants for some or all of its venues, upon the expiration of that contract and the written request of the client, Defendants shall within forty-five (45) days provide the client with a complete copy of all Client Ticketing Data and all Ticket Buyer Data historically maintained by Defendants for such venue(s) in the ordinary course of business, in a form that is reasonably usable by the client. Nothing in this provision shall be read to: (1) alter any rights Defendants would otherwise have to Client Ticketing Data or Ticket Buyer Data pursuant to the Primary Ticketing Services contract with the client, and/or its historical custom, practice, and course of dealing with the client; or (2) limit any rights the client would otherwise have to its Client Ticketing Data or Ticket Buyer Data pursuant to the Primary Ticketing Services contract with Defendants and/or its historical custom, practice, and course of dealing with Defendants. Defendants shall maintain Client Ticketing Data and Ticket Buyer Data

on behalf of its clients for no less than three (3) years. This provision only applies to contracts for Primary Ticketing Services in effect prior to the entry of this <u>Amended</u> Final Judgment.

## X. Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or Section V, defendants shall deliver to the United States and Plaintiff States an affidavit as to the fact and manner of its compliance with Section IV or Section V of this <u>Amended</u> Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States, after consultation with Plaintiff States, to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Every two (2) months prior to the private label ticketing agreement described in Section IV.A.2 becoming operational, and every six (6) months thereafter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section IV.A and the terms of Ticketmaster Host Platform binding agreement.

C.      Defendants shall, in addition, deliver to the United States and Plaintiff States an affidavit describing any revised or amended agreements with the Ticketmaster Host Platform Acquirer relating to the agreement required by Section IV.A. Such notice shall be delivered to the United States and Plaintiff States at least fifteen (15) calendar days prior to the effective date of the revised or amended agreement and Defendants shall not implement any amended agreement if the United States, after consultation with Plaintiff States, objects during the fifteen (15) day notice period.

D.      Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Amended Final Judgment. Defendants shall deliver to the United States and Plaintiff States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change if implemented.

E.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

**XI. Compliance Inspection**

A.      For purposes of determining or securing compliance with this Amended Final Judgment, or of determining whether the Amended Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative

of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

1.  access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Amended Final Judgment; and

2.  to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.  Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Amended Final Judgment as may be requested. Written reports authorized under this paragraph may, at the sole discretion of the United States, require Defendants to conduct, at Defendants' cost, an independent audit or analysis relating to any of the matters contained in this Amended Final Judgment.

C.  No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or the Attorney General's Office of any other plaintiff, except in the course of legal proceedings to which the United States is a party (including grand

jury proceedings), or for the purpose of securing compliance with this Amended Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. Notification

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), defendants, without providing advance notification to the United States and Plaintiff States, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in any person that, at any time during the twelve (12) months immediately preceding such acquisition, was engaged in the United States in providing Primary Ticketing Services during the term of this Amended Final Judgment.

Such notification shall be provided to the United States and Plaintiff States in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal

representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the 30-day period after notification, representatives of the United States make a written request for additional information, defendants shall not consummate the proposed transaction or agreement until twenty (20) calendar days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

For purposes of this Amended Final Judgment, any notice or other communication required to be provided to Plaintiffs shall be sent to the person at the address and emails set forth below (or such other addresses as a Plaintiff may specify in writing to Defendants):

United States
Owen Kendler
Chief
Media, Entertainment, and Professional Services Section
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Owen.Kendler@usdoj.gov

Arizona
Unit Chief Counsel
Arizona Attorney General's Office
Antitrust Unit
2005 N. Central Ave.
Phoenix, AZ 85004
Dana.Vogel@azag.gov

Arkansas
Public Protection Department

Arkansas Office of the Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
johnathan.carter@arkansasag.gov

California
Antitrust Law Section
State of California Department of Justice
300 S. Spring Street, Suite 1720
Los Angeles, CA  90013
Paula.Gibson@doj.ca.gov

Florida
Antitrust Division
Office of the Attorney General of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050
lee.istrail@myfloridalegal.com

Illinois
Antitrust Bureau
Office of the Illinois Attorney General
100 W Randolph St., Floor 13
Chicago, IL, 60601-3397
JChervin@atg.state.il.us

Iowa
Max M. Miller
Consumer Protection Division
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Max.Miller@ag.iowa.gov

Louisiana
Stacie Lambert deBlieux
Chief, Complex Litigation Section
Louisiana Department of Justice
1885 N. 3rd Street
Baton Rouge, LA 70802
deblieuxs@ag.state.la.us

Massachusetts
Chief, Antitrust Division
Massachusetts Office of the Attorney General
One Ashburton Place, 18th Floor

Boston, MA 02108
michael.mackenzie@state.ma.us

Nebraska
Chief, Consumer Protection Division
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, NE 68509
meghan.stoppel@nebraska.gov

Nevada
Bureau of Consumer Protection
Office of the Nevada Attorney General
8945 W. Russell Road, Suite 204
Las Vegas, Nevada 89148
LTucker@ag.nv.gov

New Jersey
Consumer Fraud Prosecution Section
Department of Law & Public Safety – Division of Law
State of New Jersey Office of the Attorney General
124 Halsey Street, P.O. Box 45029
Newark, New Jersey 07101
patricia.schiripo@law.njoag.gov

Ohio
Chief
Antitrust Section
Ohio Attorney General's Office
150 East Gay Street, 22nd Floor
Columbus, Ohio 43215
jennifer.pratt@ohioattorneygeneral.gov

Oregon
Civil Enforcement Division
Oregon Department of Justice
1162 Court St NE, Salem, OR 97301-4096
Tim.D.Nord@doj.state.or.us

Pennsylvania
Commonwealth of Pennsylvania
Office of Attorney General
Antitrust Section
Strawberry Square, 14th Floor
Harrisburg, PA 17120
jbetsko@attorneygeneral.gov

Rhode Island
Chief, Civil Division
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
KHoffmann@riag.ri.gov

Tennessee
Deputy, Consumer Protection Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN  37202
David.McDowell@ag.tn.gov

Texas
Division Chief
Antitrust Division
Office of the Texas Attorney General
300 W. 15th Street
Austin, Texas 78701
David.Ashton@oag.texas.gov

Wisconsin
Unit Director
Division of Legal Services – Public Protection Unit
State of Wisconsin Department of Justice
17 West Main Street
PO Box 7857
Madison, WI 53707-7857
CooleyGJ@DOJ.STATE.WI.US

Washington
Paula Pera C.
Assistant Attorney General, Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
paula.pera@atg.wa.gov

## XIII. No Reacquisition

A.      Defendants may not reacquire any part of the Divestiture Assets during the term

of this Amended Final Judgment.

28

B.      Following the expiration of the private label ticketing agreement with the Ticketmaster Host Platform Acquirer required by Section IV.A.2: (1) Defendants shall not provide Primary Ticketing Services to any venues in North America for which, by virtue of an ownership interest, the Ticketmaster Host Platform Acquirer controls the rights to select the Primary Ticketing Services provider; and (2) for all other venues in North America, Defendants shall not provide Primary Ticketing Services on behalf of or pursuant to a ticketing contract with the Ticketmaster Host Platform Acquirer. Nothing in this Section shall prevent Defendants from: (1) competing to provide Primary Ticketing Services to venues (including such venues managed by the Ticketmaster Host Platform Acquirer) other than those for which, by virtue of an ownership interest, the Ticketmaster Host Platform Acquirer controls the rights to select the Primary Ticketing Services provider; and (2) providing Primary Ticketing Services to artist fan clubs in venues owned, operated, or managed by the Ticketmaster Host Platform Acquirer.

## XIV. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Amended Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Amended Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV. Expiration of Amended Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

Sections I, II, III, IX, XI, XII, XIII.A., XIV, XV, XVI, XVII, XVIII, and XIX of this Amended Final Judgment are extended and shall expire on December 31, 2025, unless the Court

29

grants further extension. All other provisions in this Amended Final Judgment shall expire on July 30, 2020.

## XVI. Public Interest Determination

Entry of this Amended Final Judgment is in the public interest. The parties havepreviously complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of thise Final Judgment, entered by the Court on July 30, 2010 (the "2010 Final Judgment"), the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of thisentry of this Amended Final Judgment is in the public interest.

## XVII. Compliance Provisions

A.      Appointment of an Independent Monitoring Trustee

       1.      Upon application of the United States, after consultation with Plaintiff States, the Court will appoint an independent Monitoring Trustee selected by the United States, after consultation with Defendants, and approved by the Court.

       2.      The Monitoring Trustee will have the power and authority to monitor Defendants' compliance with the terms of this Amended Final Judgment and will have other powers as the Court deems appropriate. If the Monitoring Trustee determines that any violation of this Amended Final Judgment has occurred, the Monitoring Trustee shall promptly

recommend an appropriate remedy to the United States, which, in its sole discretion, after consultation with Plaintiff States, can accept, modify, or reject a recommendation to pursue a remedy.

3.    Defendants may not object to actions taken by the Monitoring Trustee in fulfillment of the Monitoring Trustee's responsibilities pursuant to this Amended Final Judgment or any other Order of the Court on any ground other than malfeasance by the Monitoring Trustee.  Objections by Defendants to actions taken by the Monitoring Trustee must be conveyed in writing to the United States and the Monitoring Trustee within ten calendar days of the Monitoring Trustee's action that gives rise to Defendants' objection.

4.    The Monitoring Trustee will serve at the cost and expense of Defendants as detailed in a written agreement, on terms and conditions, including terms and conditions governing confidentiality requirements and conflict-of-interest certifications, that are approved by the United States after consultation with Defendants.

5.    The Monitoring Trustee may hire, at the cost and expense of Defendants, agents or consultants, including investment bankers, attorneys, and accountants, reasonably necessary in the Monitoring Trustee's judgment to assist with the Monitoring Trustee's duties. Agents or consultants will be accountable solely to the Monitoring Trustee and will serve on terms and conditions, including terms and conditions governing confidentiality

requirements and conflict-of-interest certifications, that are approved by the United States after consultation with Defendants.

6.    The compensation of the Monitoring Trustee and agents or consultants retained by the Monitoring Trustee must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities. If the Monitoring Trustee and Defendants are unable to reach agreement on the Monitoring Trustee's compensation or other terms and conditions of engagement within twenty-one calendar days of the appointment of the Monitoring Trustee, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring an agent or consultant, the Monitoring Trustee must provide written notice of the hiring and the rate of compensation to Defendants and the United States.

7.    The Monitoring Trustee must account for all costs and expenses incurred.

8.    Defendants must use their best efforts to assist the Monitoring Trustee to monitor Defendants' compliance with their obligations under this Amended Final Judgment. The Monitoring Trustee and agents or consultants retained by the Monitoring Trustee must, subject to protections for trade secrets, other confidential research, development, or commercial information, and any applicable privileges, have full and complete access to all personnel, books, records, and facilities relating to compliance with this Amended Final Judgment. Defendants may not take any action to

interfere with or to impede the Monitoring Trustee's accomplishment of
its responsibilities.

9.      The Monitoring Trustee must investigate and report on Defendants'
compliance with this Amended Final Judgment.  The Monitoring Trustee
must provide periodic reports to Plaintiffs setting forth Defendants' efforts
to comply with Defendants' obligations under this Amended Final
Judgment.  The United States, in its sole discretion, will set the frequency
of the Monitoring Trustee reports.

10.     The Monitoring Trustee will serve until the expiration of this Amended
Final Judgment.

11.     If the United States, after consultation with Plaintiff States, determines
that the Monitoring Trustee is not acting diligently or in a reasonably cost-
effective manner, the United States may recommend that the Court
appoint a substitute.

B.      Antitrust Compliance Officer.

1.      Within twenty-one days of entry of this Amended Final Judgment,
Defendants shall appoint an Antitrust Compliance Officer who is an
internal employee or officer of one of Defendants, and identify to
Plaintiffs the Antitrust Compliance Officer's name, business address,
telephone number, and email address. Within forty-five days of a vacancy
in the Antitrust Compliance Officer position, Defendants shall appoint a
replacement, and shall identify to Plaintiffs the replacement Antitrust
Compliance Officer's name, business address, telephone number, and

email address. In all events, Defendants' appointment of any Antitrust Compliance Officer is subject to the approval of the United States, in its sole discretion.

2.      The Antitrust Compliance Officer shall have the following minimum qualifications:

a.      be an active member in good standing of the bar in any U.S. jurisdiction; and

b.      have at least five years' experience in legal practice, including experience with antitrust, regulatory or compliance matters.

3.      The Antitrust Compliance Officer shall, directly or through the employees or counsel working under the Antitrust Compliance Officer's authority and direction:

a.      Within twenty-one days after the Antitrust Compliance Officer's appointment, furnish to all of Defendants' Management and Relevant Employees a copy of this Amended Final Judgment;

b.      Within thirty days after the Antitrust Compliance Officer's appointment, in a manner to be devised by Defendants and approved by the United States, provide Defendants' Management and Relevant Employees reasonable notice of the meaning and requirements of this Amended Final Judgment;

c.      Twice during the first year, then annually thereafter, brief Defendants' Management and Relevant Employees on the meaning and

requirements of this Amended Final Judgment, with written materials for each briefing to be approved by the United States in its sole discretion;

d.    Brief any person who succeeds a person identified as Management or a Relevant Employee within sixty days of such succession;

e.    Obtain from each person designated as Management or a Relevant Employee, within thirty days of that person's receipt of this Amended Final Judgment, a certification that the person (i) has read and understands and agrees to abide by the terms of this Amended Final Judgment; (ii) is not aware of any violation of this Amended Final Judgment that has not been reported to Defendants; and (iii) understands that failure to comply with this Amended Final Judgment may result in an enforcement action for civil or criminal contempt of court; and

f.    Annually communicate to Defendants' Management and Relevant Employees that they may disclose to the Antitrust Compliance Officer or Monitoring Trustee, without reprisal or adverse consequence for such disclosure, information concerning any violation or potential violation of this Amended Final Judgment or the U.S. antitrust laws by Defendants.

C.    Venue Disclosure. Defendants shall provide notice and a copy of this Amended Final Judgment, in a form and manner to be proposed by Defendants and approved by the United States in its sole discretion, to: (1) every Venue Owner for whom Ticketmaster provides Primary Ticketing Services, or with whom Ticketmaster is negotiating or discussing the provision of Primary Ticketing Services, within thirty days of entry of this Amended Final Judgment; and (2) every Venue Owner at the beginning of any negotiation with Ticketmaster and/or Live Nation

35

related in whole or in part to Primary Ticketing Services.  Defendants shall provide Plaintiffs with its proposed notice, including the list of recipients, within ten days of the filing of this Amended Final Judgment. The notice shall include an explanation of the requirements of Section IX of this Amended Final Judgment, a statement encouraging Venue Owners to contact the Department of Justice and any Plaintiff State if they are or become aware of any potential violations of this Amended Final Judgment, and a statement waiving any contractual obligation the venue may have to provide notice to Live Nation or Ticketmaster about any such contacts.

D.       Reporting, Investigation, and Certification Requirements

1.       Defendants shall:

a.       Upon Management or the Antitrust Compliance Officer learning of any violation or potential violation of any provision of this Amended Final Judgment, (i) promptly notify the Monitoring Trustee and take appropriate action to investigate, and in the event of a violation, terminate or modify the activity so as to comply with this Amended Final Judgment, (ii) maintain all documents related to any violation or potential violation of this Amended Final Judgment for a period of five years or the duration of this Amended Final Judgment, whichever is shorter, and (iii) maintain, and furnish to Plaintiffs upon request, a log of (a) all such documents for which Defendants claim protection under the attorney-client privilege or the attorney work product doctrine, and (b) all potential and actual violations, even if no documentary evidence regarding the violations exist;

b.       Within seven days of Management or the Antitrust Compliance Officer learning of any violation or potential violation of any

36

provision of this Amended Final Judgment, notify Plaintiffs and the Monitoring Trustee of the violation or potential violation;

c.      Within thirty days of Management or the Antitrust Compliance Officer learning of any violation or potential violation of any provision of this Amended Final Judgment, provide to Plaintiffs and the Monitoring Trustee a statement describing the violation or potential violation, which shall include a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication;

d.      Establish a whistleblower protection policy, which provides that any employee may disclose, without reprisal or adverse consequence for such disclosure, to the Antitrust Compliance Officer or the Monitoring Trustee information concerning any violation or potential violation by the Defendants of this Amended Final Judgment or the U.S. antitrust laws;

e.      Have Live Nation's CEO certify in writing to Plaintiffs 180 days after entry of this Amended Final Judgment, and thereafter annually on the anniversary date of the entry of this Amended Final Judgment, that Defendants have complied with the provisions of this Amended Final Judgment; and

f.      Maintain and produce to Plaintiffs upon request: (i) a list identifying all employees having received the compliance training required under Sections XVII.B.3.c and XVII.B.3.d of this Amended Final Judgment, and the dates on which the employees received the training; and (ii) copies of

all materials distributed as part of the annual antitrust compliance training required under XVII.B.3.c and XVII.B.3.d of this Amended Final Judgment. For all materials requested to be produced pursuant to this paragraph for which Defendants claim protection under the attorney-client privilege or the attorney work product doctrine, Defendants shall furnish to Plaintiffs a privilege log.

### XVIII. Future Enforcement

A.      In any future civil contempt action, any motion to show cause, or any similar civil action brought by any Plaintiff regarding an alleged violation of this Amended Final Judgment, Plaintiff(s) may establish a violation of this Amended Final Judgment and the appropriateness of any remedy therefor by a preponderance of the evidence.

B.      This Amended Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition Plaintiffs alleged was harmed by the challenged conduct in this Amended Complaint. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Amended Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Amended Final Judgment should not be construed against either party as the drafter.

C.      Defendants will pay a penalty of $1,000,000 per violation of each enumerated paragraph of Section IX, as modified, payable to the United States of America. For the avoidance of doubt, a single violation for purposes of calculating this penalty refers to any and all conduct prohibited by this Amended Final Judgment that occurs in relation to a Venue Owner's ticketing contract cycle, except that a violation of Section IX.A.1. shall be deemed a separate violation than

a violation of Section IX.A.2. and will be subject to a separate penalty. If, for example, there are multiple threats to Condition during the same contracting cycle, Live Nation would pay $1,000,000. If, for example, there are multiple threats to Condition and Live Nation Retaliates during the same contracting cycle, Live Nation would pay $2,000,000. For the avoidance of doubt, for these purposes, a new ticketing contract cycle begins when the previous contract is signed such that a ticketing contract cycle exists at all times for each Venue Owner.

D.      For a period of four years following the expiration of this Amended Final Judgment, if any Plaintiff has evidence that a Defendant violated this Amended Final Judgment before expiration, any Plaintiff may file an action against that Defendant in this Court requesting that the Court order (1) Defendant to comply with the terms of this Amended Final Judgment for an additional term of at least four years following the filing of the enforcement action under this Section, (2) any appropriate contempt remedies, (3) an extension of this Amended Final Judgment, (4) any additional relief needed to ensure the Defendant complies with the terms of this Amended Final Judgment, and (5) fees or expenses.

E.      For future disputes regarding Defendants' compliance with the terms of this Amended Final Judgment, the parties may agree that any such dispute may be referred to a third-party arbiter.

## XIX. Fees and Costs

Defendants shall pay the United States its reasonable costs and attorney fees incurred in investigating Defendants' conduct and in connection with its investigation of violation of the 2010 Final Judgment, in an amount of $3 million, to be paid within 60 days of entry of this Amended Final Judgment.

Date: ——30 July 2010—— _____

Court approval subject to procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.


_____/s/  Rosemary M._


Collyer_____ _____

United States District Judge